## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM CUMMINGS, | : | No. 3:23cv1325 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| SAFE AUTO INSURANCE COMPANY; | : | |
| and SAFE AUTO INSURANCE | : | |
| COMPANY *a/k/a d/b/a Safe Auto* | : | |
| *Insurance a/k/a d/b/a Safe Auto*, | : | |
| **Defendants** | : | |

## MEMORANDUM ORDER

Before the court for disposition are two pending discovery motions filed by Plaintiff William Cummings and Defendants Safe Auto Insurance Company and Safe Auto Insurance Company a/k/a d/b/a Safe Auto Insurance a/k/a d/b/a Safe Auto's (hereinafter "Safe Auto"). Plaintiff moves the court to: 1) overrule Safe Auto's objections to plaintiff's corporate designee deposition notice; 2) compel testimony by a corporate designee on those matters; and 3) compel production of the requested documents. (Doc. 30). Safe Auto opposes plaintiff's motion and has filed a motion for a protective order. (Doc. 31).

By way of brief background, on September 1, 2021, Plaintiff William Cummings sustained severe personal injuries in an automobile collision in Port Jervis, New York while riding as a passenger in a vehicle owned or leased by Rachel Orazzi. Cummings v. Safe Auto Ins. Co., No. 3:23CV1325, 2024 WL

3928890, at *1 (M.D. Pa. Aug. 23, 2024).[1]  At the time, Orazzi had an automobile policy issued by Safe Auto.  Given that he was a passenger in the vehicle, plaintiff was insured under the policy.  Plaintiff did not maintain his own automobile insurance, making the Safe Auto Policy first in priority for first party benefits.  As a result, plaintiff submitted a claim for first party medical benefits under the policy.

Safe Auto paid plaintiff $5,000.00 in personal injury protection ("PIP") benefits, the statutory minimum under 75 PA. CONS. STAT. § 1711(a). Accordingly, Safe Auto closed the medical benefits portion of plaintiff's PIP claim on or about December 27, 2021.

Later, Safe Auto asserted its right of subrogation or reimbursement against plaintiff through a medical payments lien in the amount of $5,000.00 and notified plaintiff of this lien on March 28, 2022. (Id.)  Plaintiff alleges that Safe Auto's right of subrogation or reimbursement asserted through its agent EXL and/or Trumbull Services ("EXL") is improper as it seeks to deprive him of the full amount of his PIP benefits.  Plaintiff further alleges that if he recovered in a tort action against the tortfeasor, he would have to potentially pay back the money he received from

---

[1] These brief background facts are mainly drawn from the court's opinion denying Safe Auto's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Safe Auto.  Plaintiff posits that Safe Auto is not entitled to such subrogation or reimbursement under Pennsylvania law.

At some point, plaintiff received a monetary settlement from the tortfeasor. Plaintiff's counsel, however, was forced to keep funds from the settlement in escrow for well over a year to cover the amount of the lien.  Based upon these facts, plaintiff sued Safe Auto for breach of contract and statutory bad faith under 42 PA. CONS. STAT. § 8371 ("Section 8371").

During discovery, plaintiff served upon Safe Auto a notice pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure seeking the oral deposition of a corporate designee by video ("30(b)(6) Notice"). (Doc., Pl. Motion ¶ 3).  The 30(b)(6) Notice also sought information concerning other claims involving Safe Auto's insureds.  Safe Auto objected to most of the topics identified in the 30(b)(6) Notice as well as the accompanying document requests. [2] (Id. ¶ 4).  To narrow the dispute and minimize court intervention, plaintiff limited the contested items to fourteen (14) matters of inquiry – numbers 7, 13, 20-29 and 32-33 – and nineteen (19) document requests – numbers 6, 11, 12, 18-29 and 31-34. (Doc. 30, ¶ 9).

---

[2] The court held a telephone conference to discuss these issues on July 11, 2025 and directed the parties to brief their respective positions. (Doc. 29).

Safe Auto argues that plaintiff seeks broad discovery into unrelated claims, including those involving subrogation vendors not involved in plaintiff's case and Safe Auto's practices after its acquisition by Allstate Insurance Company when it began handling subrogation internally. (Doc. 31, ¶ 27).

Rule 26 of the Federal Rules of Civil Procedure permits parties to obtain discovery of "any nonprivileged matter that is relevant to [a] claim or defense and proportional to the needs of the case." FED R. CIV. P. 26(b)(1).  In assessing proportionality, courts consider among other factors the importance of the issues at stake, the parties' relative access to relevant information, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Id. Notably, "[i]nformation within th[e] scope of discovery need not be admissible in evidence to be discoverable." Id.

"In the context of discovery, it is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that good cause exists for the order of protection." Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994) (citation and internal quotation marks omitted). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." Id. (citations and internal quotation marks omitted).  Additionally, "[t]he injury must be shown with specificity [as] [b]road allegations of harm, unsubstantiated by specific examples

4

or articulated reasoning, do not support a good cause showing." Id. (citations and internal quotation marks omitted).

The Third Circuit has adopted a general balancing test for courts to apply when considering whether to grant confidentiality orders:

> [T]he court ... must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled . . . Once the court determines that the discovery policies require that the materials be disclosed, the issue becomes whether they should be disclosed only in a designated way . . . Whether this disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public.

Id. at 787.

The Court of Appeals has emphasized that "Courts also have a great deal of flexibility in crafting the contents of protective orders to minimize the negative consequences of disclosure and serve the public interest simultaneously." Id.

*Deposition of a corporate designee* – Safe Auto contends that it did not object to discussion of its policies and procedures generally or what happened in plaintiff's own case specifically. (Doc. 31, ¶¶ 80-81). Safe Auto further maintains that it had identified a corporate designee to address these issues at deposition. (Id. ¶¶ 80-81). Nonetheless, Safe Auto objects to having its corporate designee testify on the topics of other claims unrelated to plaintiff's case. (Id. ¶ 82).

Based on the parties' submissions, the discovery dispute concerns the topics of the proposed corporate designee testimony, not the deposition itself. Those topics therefore warrant discussion.

*Discoverability of information sought by plaintiff* – Plaintiff maintains that his 30(b)(6) Notice is narrow in scope and limited to two (2) years prior to the subject accident to present and only those claims which satisfy three factors, specifically, that the claims involve: (1) a Pennsylvania policy; (2) an out-of state accident; and (3) Safe Auto seeking subrogation on a first-party claim. (Doc. 32, Pl. Br. in Supp. at 12-13).

Safe Auto opposes, arguing that information regarding other claims is not discoverable in an insurance bad faith case as such information is irrelevant. (Doc. 31, ¶¶ 40-41) (collecting cases). The court disagrees with Safe Auto.

In the Eastern District of Pennsylvania, the Honorable R. Barclay Surrick rejected similar arguments made by a defendant. Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 175–77 (E.D. Pa. 2004). According to Judge Surrick:

> [W]e disagree with Defendant's assertion that the case law broadly limits discovery in all [bad faith insurance cases]. Rather, we conclude that courts have consistently held that when a bad faith policy or practice of an insurance company is applied to the specific plaintiff, the plaintiff is entitled to discover and ultimately present evidence of that policy or practice at trial in order to prove that the insurer intentionally injured the plaintiff and to show the insurer's reprehensibility and recidivism in order to assist the jury in calculating appropriate punitive damages. [State Farm

> Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 422–24
> (2003)]. As the Supreme Court explained in State Farm,
> evidence of the lawful out-of-state conduct of the defendant
> "may be probative when it demonstrates the
> deliberateness and culpability of the defendant's action in
> the State where it is tortious" so long as the "conduct had
> a nexus to the specific harm suffered by the plaintiff." Id. at
> 1522. The Court's main interest was to prevent the due
> process problems created when the jury punished the
> defendant for conduct that "bore no relation to the
> [plaintiff's] harm. A defendant's dissimilar acts,
> independent from the acts upon which liability was
> premised, may not serve as the basis for punitive
> damages." Id.

Id. at 176–77.

Based on the foregoing, the court in Saldi allowed other similar cases to be

subject to discovery. Id. at 178.  That is because Mr. Saldi, the plaintiff, submitted

documents showing that there was a sufficient nexus between the actions of the

defendant in other cases and the specific harm suffered by him. Id.; see also

State Farm, 538 U.S. at 422 ("Lawful out-of-state conduct may be probative

when it demonstrates the deliberateness and culpability of the defendant's action

in the State where it is tortious, but that conduct must have a nexus to the

specific harm suffered by the plaintiff."))

Here, the central issue is whether the requested discovery is likely to yield

relevant evidence and whether its potential benefit outweighs the burden or

expense to Safe Auto.  Because discovery determinations are case-specific, the

court will conduct its own individual balancing analysis under Pansy to assess

7

the relevance of the plaintiff's requests.  In evaluating relevance, the court first

reviews the elements of Pennsylvania's bad faith statute.

The Pennsylvania Supreme Court has held that "to prevail in a bad faith

insurance claim pursuant to Section 8371, a plaintiff must demonstrate, by clear

and convincing evidence,[3] (1) that the insurer did not have a reasonable basis for

denying benefits under the policy and (2) that the insurer knew or recklessly

disregarded its lack of a reasonable basis in denying the claim." Rancosky v.

Washington Nat'l Ins. Co., 170 A.3d 364, 377 (Pa. 2017); see 42 PA. CONS. STAT.

§ 8371 (authorizing recovery of punitive damages, court costs, and attorney fees

for an insurance company's bad faith toward an insured).  Bad faith liability can

be founded on an insurance company's "lack of good faith investigation into

facts, and failure to communicate with the claimant." Condio v. Erie Ins. Exch.,

899 A.2d 1136, 1142 (Pa. Super. Ct. 2006) (citation and quotation marks

omitted).

Under State Farm, evidence of Safe Auto's conduct in other cases is

relevant and potentially admissible only if it bears a sufficient nexus to the

conduct at issue in this case.

---

[3] Clear and convincing evidence is the "highest standard of proof for civil claims[.]" Berg v. Nationwide Mut. Ins., 189 A.3d 1030, 1037 (Pa. Super. Ct. 2018) (internal quotation marks and citation omitted).  It "requires evidence clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy of the truth of the precise facts in issue." Id. (internal quotation marks and citation omitted).

Plaintiff's asserts that Safe Auto maintained a policy and practice of improperly asserting unlawful liens. (Doc. 1-1, Compl. ¶ 42).  Per plaintiff, this practice reflects Safe Auto's self-interest, ill-will, and knowledge that its lacks a reasonable basis to assert such liens. (Id.)  Through a subpoena, plaintiff obtained documents from EXL related to ten (10) claims involving Pennsylvania Safe Auto policies and out-of-state accidents in which subrogation was asserted on first-party benefits but no recovery was obtained. (See Doc. 30-4, Ex. D).  The documents reflect that Safe Auto referred plaintiff's claim to EXL, its subrogation agent, despite noting in its own claims records that no subrogation potential existed. (See Doc. 32, Pl. Br. in Supp. at 5-9; see also Doc. 30-4, Ex. D).  Plaintiff further asserts that EXL's notes were entered in a system known as "Subrosource" which appears to synchronize entries with Safe Auto's internal claims notes. (Pl. Br. in Supp at 4; Ex. D at ECF pp. 1-9).

The evidence offered by plaintiff warrants further inquiry into Safe Auto's handling of other first-party PIP subrogation claims involving Pennsylvania policies and out-of-state accidents. This evidence suggests that plaintiff's discovery requests will likely lead to relevant information.  Specifically, the information may show that Safe Auto acknowledged the absence of subrogation rights while pursuing subrogation.  The same evidence further suggests that this conduct was not an isolated incident or mere mistake.  Rather, it may reflect a

repeated and objectionable business practice.[4]  This evidence also bears directly

on Safe Auto's state of mind.  Such an inquiry is relevant as to whether Safe

Auto acted with reckless disregard of the absence of a reasonable basis under

Rancosky.  It is likewise relevant to reprehensibility and recidivism for purposes

of punitive damages under State Farm.  Thus, that evidence plaintiff is seeking

here is relevant to this bad faith claim.

Safe Auto argues that factual differences and varying circumstances render

discovery of other claims irrelevant. This argument is not persuasive.  Plaintiff

seeks discovery limited to claims involving Pennsylvania policies and out-of-state

accidents in which Safe Auto sought reimbursement for first-party benefits.

Because these requests are narrowly tailored, the discovery relates to materially

identical circumstances and similar legal issues present here.  As plaintiff

asserts, any attempt to seek subrogation for first-party benefits paid under a

Pennsylvania policy arising from an out-of-state accident would be objectively

unlawful as such recovery is prohibited by 75 PA. CONS. STAT. § 1720.  (See Doc.

32, Pl. Br. in Supp. at 20-21).

Having concluded that other claims involving a Pennsylvania policy, an out

of state accident, and Safe Auto's pursuit of subrogation on a first-party claims

---

[4] The relevant inquiry is not whether any amounts were ultimately recovered through subrogation; rather, whether Safe Auto attempted to recover monies to which it had no entitlement.

10

are relevant to plaintiff's bad faith claim, the court next turns to the specifics of each of plaintiff's requests.

*Files related to the ten claims identified by EXL* – Plaintiff seeks the files pertaining to the ten claims Safe Auto referred to EXL for subrogation. (Doc. 32, Pl. Br. in Supp at 14). EXL has already provided Safe Auto with the claim numbers for those files and Safe Auto has acknowledged that it reviewed them. (Doc. 31, ¶¶ 23-26). Accordingly, producing the files for those ten (10) claims is not unduly burdensome. The fact that Safe Auto may need to redact names or other identifying personal information does not render the production burdensome.

*Pennsylvania policies involving out of state accidents* – Plaintiff seeks discovery of claims involving Pennsylvania policies and New York accidents. (See Doc. 32, Pl. Br. in Supp. at 16-17). Plaintiff also seeks discovery of claims involving Pennsylvania policies and all out-of-state accidents. (Id.) Safe Auto takes the position that, if discovery of other claims is permitted at all, it should be limited to claims in the State of New York. (See Doc. 31, ¶ 86). Nonetheless, Safe Auto indicated that it had identified a total of 229 subrogation assignments which were made during the time period between September 1, 2019 and July 15, 2025 under a Pennsylvania automobile insurance policy for an accident in

11

another state in relation to the payment of first-party medical expenses. (Doc. 31, ¶ 36).[5]

As reflected in the claim notes for the ten claims handled by EXL, regardless of whether the accident occurred in Maryland, Nevada, New Jersey or Delaware, the conclusion was the same: Safe Auto had no subrogation rights under the Pennsylvania policies. (See Doc. 30-3 at ECF p. 4).  Accordingly, the information plaintiff seeks is relevant to an alleged repeated and objectionable business practice and is therefore discoverable.

*Other claims where Safe Auto acted as its own subrogation agent* – Plaintiff contends that other claims are also relevant and discoverable where Safe Auto acted as its own subrogation agent for Pennsylvania policies involving out-of-state accidents, regardless of whether any recovery was made. (Doc. 32, Pl. Br. in Supp. at 15). The court agrees with plaintiff. See Berg, 189 A.3d at 1055

---

[5] Per Safe Auto, the subrogation assignments were made across 12 states as follows: (122) in New York; (41) in New Jersey; (27) in Delaware; (13) in Maryland; (11) in Florida; (4) in North Carolina; (3) in Georgia; (2) in South Carolina; (2) in Massachusetts; (1) in Connecticut; and (1) in Ohio. (Doc. 31, ¶¶ 36, 37)

Safe Auto argues that determining whether its subrogation assignments were legitimate in other states would require reviewing the facts and applicable law for each of the 229 claims. (Id. ¶ 71). Per Safe Auto, this process could also require a choice of law analysis. (Id. ¶ 72). Safe Auto further contends that litigating the merits of 229 subrogation assignments could result in a series of "mini trials" under other states' laws. (Id. ¶ 73).  The court is not convinced that these concerns should preclude plaintiff from obtaining discovery.

(holding that "a finding of bad faith under section 8371 may be premised upon an insurer's conduct occurring before, during or after litigation.").

Information that Safe Auto obtained while pursuing PIP subrogation on its own behalf in these cases is directly relevant to whether Safe Auto had notice that such subrogation was unlawful before it pursued subrogation in plaintiff's case.  The United States Supreme Court has instructed that, in assessing whether defendant's prior transgressions demonstrate recidivism warranting punishment, "courts must ensure the conduct in question replicates the prior transgressions." State Farm, 538 U.S. at 423.  The evidence plaintiff seeks may show that Safe Auto's conduct in this case mirrors its earlier conduct.  Such information is thus discoverable.

Timeframe – Because Safe Auto has already identified 229 subrogation assignments made between September 1, 2019 and July 15, 2025, it has already located the responsive claims files and reviewed and categorized them by state. All that remains is the ministerial task of making any necessary redactions and producing the files.

Expense of the proposed discovery –The party asserting undue burden or expense must specifically demonstrate it, while the party seeking discovery must show its likely benefit. FED. R. CIV. P. 26, Advisory Committee Notes, 2015

Amend. With respect to this factor, the court considers the overall balance between the burden of the proposed discovery and its anticipated benefit. Id.

Here, Safe Auto argues that plaintiff's discovery requests concerning other claims files are disproportionate to the needs of this case because of the purported amount-in-controversy. (Doc. 35, Def. Br. in Opp. at 24-30). Safe Auto's argument overlooks the nature of plaintiff's claims and the remedies available under Pennsylvania law. See 42 PA. CONS. STAT. § 8371 (allowing recovery of attorney's fees, interest, and punitive damages for bad faith conduct).

This court previously held in ruling on Safe Auto's motion to dismiss that:

> Here, plaintiff's complaint alleges the following damages: emotional disturbance, potentially lifelong and foreseeable, needless expenses, unnecessary delay and hardship, deprivation of due and owning funds which had to remain in escrow, and the full amount and value of PIP benefits. (Doc. 1-1, ¶¶ 65-66). These damages go above and beyond the PIP limits which defendants eventually paid to the plaintiff. Accordingly, this breach of contract claim will not be dismissed on the basis that plaintiff has already been paid the limits to which he was entitled. See, e.g., Amitia v. Nationwide Mut. Ins. Co., No. 3:08cv335, 2009 WL 111578 at *3 (M.D. Pa. Jun. 7, 2013) (allowing insurance breach of contract claim to proceed where the insurer had paid the benefits under the policy but plaintiff sought damages different from the benefits such as compensation for emotional distress).

Cummings, 2024 WL 3928890 at *3.

Accordingly, to the extent Safe Auto argues that the amount in controversy is limited to $5,000, the nature of the case reflects an amount in controversy that could far exceed $5,000 when attorney's fees, interest, and punitive damages are contemplated.

Turning to the cost of compliance with plaintiff's discovery requests, Safe Auto contends that responding to plaintiff's discovery would be unduly burdensome. Specifically, Safe Auto asserts that reviewing 229 files involving subrogation assignments to locate the relevant information and redact confidential and privileged information would cost between $412,200 and $583,950. (Doc. 35, Def. Br. in Opp. at 25-26). According to Safe Auto, these estimates are based on average hourly rates of $150 for paralegals and $300 for attorneys. (Id. at 27 n.14) (citing cases related to the reasonableness of the hourly rates). Safe Auto also maintains that the review would take at least ninety days to complete.[6] (Id.)

Safe Auto further argues that its claims system lacks a search function that would allow it to identify subrogation demands or responses in cases involving Pennsylvania automobile insurance policies and out-of-state accidents. (Id. at 7).

_____

[6] Per Safe Auto reviewing those files and redacting confidential and privileged information would take approximately 1,832- 2,519 hours. (Doc. 31-3, ¶ 5). Specifically, Safe Auto estimates that producing each of the 229 claim files would take: 1) 2 to 3 attorney hours per file to review each file for responsiveness; 2) 2-3 hours of attorney time per file to appropriately redact privileged information; and 3) 4-5 hours of paralegal time per file to appropriately redact confidential and personal information. (Doc. 31-3 at ¶¶ 10, 12, 14).

15

As a result, Safe Auto asserts that it would be required to conduct a manual review of each file. (Id.)  Lastly, Safe Auto requests that, if discovery of other claims is permitted, it be limited to written discovery rather than a corporate designee deposition. (Doc. 35 Def. Br. in Opp. at 31).  Safe Auto further requests that plaintiff be required to bear 50 percent of the cost associated with conducting the discovery.[7] (Id.)

After careful review of the parties' submissions, the court concludes that cost sharing is not warranted.  Generally, a responding party is presumed to bear its own costs of complying with discovery requests.  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978).  Here, Safe Auto has already identified the 229 subrogation assignments and the corresponding files are therefore accessible.  To the extent Safe Auto raises concerns about attorney time and expense, the tasks identified are delegable to less experienced professionals. See Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir. 1983) (The Third Circuit does not "approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates . . .  A Michelangelo should not charge Sistine Chapel rates for

---

[7] Rule 26(c)(1)(B) "include[s] an express recognition of protective orders that allocate expenses for disclosure or discovery . . . Recognizing the authority does not imply that cost-shifting should become a common practice. Courts and parties should continue to assume that a responding party ordinarily bears the costs of responding." FED. R. CIV. P. 26, Advisory Committee Notes, 2015 Amend.

painting a farmer's barn."). Plaintiff's discovery requests are therefore neither unduly burdensome nor disproportionate to the needs of the case.

In sum, the requested discovery is proper. Accordingly, it is hereby **ORDERED** that:

1) Plaintiff's motion to compel discovery, (Doc. 30), is **GRANTED**;

2) Safe Auto's motion for protective order, (Doc. 31), is **DENIED**;

3) Safe Auto shall designate and allow a corporate designee to testify on the topic of Pennsylvania Safe Auto policies and out-of-state accidents in which subrogation was asserted on first-party benefits;

4) Safe Auto shall produce the files related to the 229 subrogation assignments it had identified;

5) The discovery is limited to the time period between September 1, 2019 and July 15, 2025;

6) As applicable, Safe Auto shall produce a privilege log that identifies with sufficient specificity any material withheld on the basis of a claimed privilege or protection; and

7) The case management deadlines are extended as follows:

   a. Discovery shall be completed by May 11, 2026;

   b. Plaintiff's experts reports are due by May 11, 2026;

   c. Dispositive motions are due by June 5, 2026;

17

d. Safe Auto's expert reports are due by June 12, 2026.

Date: __2/10/26__

JUDGE JULIA K. MUNLEY
United States District Court

18